UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA KENNEDY,

                Petitioner,                Case Number 2:11-CV-13544
                                            Honorable Sean F. Cox

THOMAS MACKIE,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, AND GRANTING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Dana Kennedy's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS § 750.316; assault with intent to murder, MICH. COMP. LAWS § 750.83; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and felony firearm, MICH. COMP. LAWS § 750.227b. As a result of these convictions Petitioner is currently serving a life sentence for the first-degree murder conviction, 25-to-80 years for the assault with intent to murder conviction, 3-to-5 years for the felon in possession of a firearm conviction, and a 2-year consecutive sentence for the felony firearm conviction.

The petition raises claims related to new ballistics evidence from the Michigan State Police indicating that casings found at the scene came from multiple firearms, contrary to the evidence presented at trial. The petition also raises a claim related to the recanting affidavit of a jail-house informant who testified against Petitioner at trial, as well as other claims of trial error.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will, however, grant Petitioner a certificate of appealability with respect to his first two claims because reasonable jurists could debate whether those claims have merit.

### I. Facts and Procedural History

This case involves a fatal shooting that occurred outside a small market located in the City of Detroit on the night of February 1, 2005.

D'Andre Humphrey testified at trial that as he pulled up to the Save Up Market on the corner of 14th and Puritan in Detroit, he saw Roderick Heath, Byron Royster, and Towana Moton emerge from the store. As Heath and Moton walked to the corner of the building, Humphry saw a red Jeep Liberty pull up. Humphrey then heard gunshots in the parking lot. He put his car in reverse, looked around, and saw Petitioner hanging out the window of the red Jeep Liberty firing an AK-47 assault rifle. Humphrey had known Petitioner for about a year from dealing drugs in the neighborhood and had no trouble recognizing him.

Royster testified that as he came out of the store, he also noticed the red Jeep Liberty near the store. Royster glanced at the Jeep and then heard more than 20 continuous shots. Royster ran for cover. Royster was unable to identify the shooter.

Moton testified that she saw the red Jeep pull up while she and Heath were standing at the corner of the store. She heard gunshots coming from the passenger side of the vehicle as it drove toward her and Heath. As the firing began, Heath told Moton to get down and pushed her to the ground. After the shooting stopped, Moton crawled to Heath at the front of the store and tried to speak to him, but he was unresponsive.

Royster returned to the scene and noticed Heath lying on the ground. Moton was next to Heath, screaming and crying. Roster asked Humphry who killed his cousin. Humphrey replied "it was Butch," a name Petitioner was known by, who killed Heath.

Evidence was presented that Petitioner was a crack dealer in the neighborhood, and that a

dispute resulted from Petitioner's accusation that the victim and others were responsible for burning down his crack house.

A technician from the Detroit Police Laboratory testified that all the bullet casings found at the scene were fired from the same weapon.

Kim Harvey, a jail-house informant, testified that during conversations he had with Petitioner in jail, Petitioner described how he committed the murder. Harvey testified that he hoped for consideration in return for his testimony, but he had no deal with the prosecutor.

Petitioner presented an alibi defense. He testified that he was at 218 East Buena Vista and not near the party store around the time of the shooting. Defense witness Eddie Hines testified that on the day of the shooting he was at his home on LaSalle and was talking with Petitioner on the phone at the time of the incident. Another defense witness, Durica Woods, testified that at approximately the same time, she was on the phone with Petitioner.

Based on this evidence, Petitioner was convicted and sentenced as indicated above.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claims:

I. This matter must be remanded for an evidentiary hearing where the state's jailhouse informant has admitted that he fabricated his testimony against this Defendant in order to receive an undisclosed promise of leniency from the police. The defendant should also be granted discovery of the police files relating to this witness.

II. Where the state's informant states that he was granted undisclosed consideration for his testimony, this matter should be remanded for discovery of the police files on the informant's case.

III. Where the state acknowledged that it was considering offering 404(b) evidence since the preliminary examination and did not file a timely notice of intent to offer such evidence, the defendant was prejudiced as a matter of law and this matter should be remanded for a new trial.

-3-

IV. The trial court committed reversible error in admitting evidence of the defendant's alleged flight to Georgia.

The Michigan Court of Appeals affirmed Petitioner's in an unpublished opinion. *People v. Kennedy*, No. 269102, 2007 WL 2118853 (Mich. Ct. App. July 24, 2007).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Kennedy*, 480 Mich. 958 (2007) (table).

Petitioner returned to the trial court and filed his first motion for relief from judgment, raising claims that are not being presented in the instant action. The trial court denied the motion. The Michigan Court of Appeals denied Petitioner's subsequent application for leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). *People v. Kennedy*, No. 293347 (Mich. Ct. App. Nov. 23, 2009). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that application was also denied under Rule 6.508(D). *People v. Kennedy*, 488 Mich. 869 (2010) (table).

Petitioner then filed the instant action. While the petition was pending, Petitioner became aware that the ballistics evidence from his case was retested by the Michigan State Police as the result of the closing of the Detroit Police Crime Lab.[1] Petitioner filed a motion to stay the case so he could return to the trial court to file a second post-conviction motion alleging that several distinct constitutional violations occurred as a result of the presentation of the unreliable ballistics evidence

---

[1]The Detroit Police Department Crime Lab Firearms Unit was suspended from analyzing any firearms evidence in April 2008, after it was discovered that the crime lab was producing results that were potentially unreliable. *People v. Williams*, 2011 Mich. App. LEXIS 2131 (Mich. Ct. App. Dec. 1, 2011).

at trial.  The Court granted the motion.

Petitioner filed his second motion for relief from judgment, but the trial court denied it, finding that Petitioner was not entitled to file a second motion and that he could not demonstrate that he was prejudiced by the presentation of the unreliable evidence. Further state court review was prohibited by Michigan Court Rule 6.502(G)(1).

Petitioner then filed an amended brief in support of his petition, raising the following claims renumbered by the Court:

I. Petitioner's constitutional rights were violated by the presentation of false ballistics evidence at trial.

II. The prosecutor committed misconduct when she submitted false testimony from a jail-house informant in violation of the law set forth in *Brady v. Maryland*.

III. Petitioner is entitled to relief because he was unconstitutionally denied his Sixth Amendment right to self-representation.

IV. The trial court erred when it admitted prior bad acts evidence at trial in order to show Petitioner's propensity towards violence.

V. The prosecutor committed misconduct, and thereby denied Petitioner his right to due process, when she improperly argued that Petitioner was hiding behind the right to remain silent.

VI. Petitioner was denied the effective assistance of counsel when counsel failed to object to the prosecutor's misconduct in Habeas Claim IV and when he failed to investigate certain evidence that would have assisted at trial.

VII. Petitioner was denied the effective assistance of counsel on appeal when his appellate counsel failed to raise more meritorious issues during his direct appeal.

-5-

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]

-6-

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## III. Analysis

### A. New Ballistics Evidence

Petitioner first claims that the new evidence showing that the bullet casings found at the scene came from more than one firearm entitles him to relief under multiple legal theories. Specifically, he claims that: (1) the prosecutor failed to disclose evidence favorable to the defense; (2) the prosecutor presented evidence it knew or should have known was false; (3) Petitioner was denied his right to confrontation and present a defense; (4) the remaining evidence was insufficient to support Petitioner's conviction for first-degree murder; and (5) Petitioner was denied the effective assistance of counsel because his attorney was handicapped by the presentation of the false evidence. Respondent asserts that none of these theories have merit because the fact that the ballistics evidence presented at trial was incorrect was not known by anyone at the time of trial. Respondent also asserts that any error was harmless.

First, to the extent that Petitioner is making a free-standing claim that the new evidence entitles him to relief, it is not cognizable on federal habeas review. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id*.; *see* also *Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999). Freestanding claims of actual innocence are therefore not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. See *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases). Accordingly, Petitioner is not entitled to relief based on any free standing claim of actual

innocence based on the new ballistics evidence because it cannot be supported by clearly established Supreme Court precedent. See *Wright v. Stegall*, 247 Fed. App'x. 709, 711 (6th Cir. 2007).

## 1. Failure to Disclose Evidence Favorable to Defense

Petitioner first asserts that he is entitled to relief because the prosecution failed to disclose exculpatory evidence.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. See *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. See *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994). The petitioner bears the burden of establishing each of these three elements. See *Carter*, 218 F.3d at 601.

Furthermore, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

Here, Petitioner has not shown that evidence that more than one firearm was used at the

scene was suppressed by the prosecutor either willfully or inadvertently. Petitioner does not allege that at the time of Petitioner's 2006 trial it was known that the ballistic testing performed at the Detroit Police lab was unreliable. The prosecutor, therefore, cannot fairly be said to have suppressed this evidence because it did not exist. See *Hodges v. Parker*, 493 F. App'x 704, 709 (6th Cir. 2012), cert. denied, 133 S. Ct. 954, 184 L. Ed. 2d 741 (2013) (government had no obligation to disclose report that did not exist at the time of defendant's trial); *Brogdon v. Blackburn*, 790 F.2d 1164, 1168 (5th Cir. 1986) (prosecution has no duty to turn over to the defense evidence that does not exist). Accordingly, Petitioner cannot demonstrate entitlement to relief under this legal theory.

**2. Presentation of False Evidence**

Petitioner's argument that the prosecutor presented false evidence when it presented evidence that the bullet casings came from a single firearm fails for the same reason.

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); accord *Napue v. Illinois*, 360 U.S. 264, 271 (1959). To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. See *Coe v. Bell*, 161 F.3d 320, 343(6th Cir. 1998). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. See, e.g., *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). The Supreme Court has never held that the false testimony of a police officer in itself violates

-10-

constitutional rights. *Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983).

Again, because Petitioner has not alleged that the prosecutor knew of the error in the Detroit Police Lab's report, this allegation is without merit.

### 3. Confrontation and Right to Present a Defense

Petitioner asserts that he was denied his right to confrontation and right to present a defense because of the admission of the inaccurate report. The argument suffers from the same difficulty.

The Supreme Court has recognized "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

Similarly, if a trial court restricts cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) (per curiam) (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

Here, Petitioner does not state a right to present a defense or confrontation claim because there was no ruling by the trial court that prevented him from challenging the original ballistics report or from presenting evidence of his own.

### 4. Sufficiency of the Evidence

Petitioner next asserts that if the Detroit Police Lab report is discarded, and the new report indicating more than one firearm was used is considered in its place, there is insufficient evidence left support Petitioner's first-degree murder conviction.

Petitioner is not entitled to relief on this basis "because *Jackson v. Virginia*, 443 U.S. 307

-11-

(1979), requires the court to evaluate the record evidence to determine whether a finding of guilt could be supported. The [new evidence] was not presented at trial and therefore cannot be considered in an insufficiency argument." *Thomas v. Cain*, 139 Fed. Appx. 620, 621 (5th Cir. 2005) (parallel and internal citations omitted) (quoting *Jackson*, 443 U.S. at 318); see also *Herrera*, 506 U.S. at 402 (citation omitted) ("[T]he sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to nonrecord evidence, including newly discovered evidence."); *Goins v. Angelone*, 52 F. Supp. 2d 638, 678 (E.D. Va. 1999).

### 5. Ineffective Assistance of Counsel

Petitioner next argues that his trial attorney's performance was handicapped by the inaccurate report. The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687.

Petitioner does not allege that counsel was ineffective for failing to challenge the Detroit Police Lab's report, nor for failing to request independent testing prior to trial. Rather, his argument seems to be that the inaccurate testing–in itself–prevented his counsel from effectively representing him at trial. As such, Petitioner ignores the first prong of the *Strickland* test. He has not alleged that his counsel made any errors regarding the ballistics evidence given what was known at the time of trial. Therefore, his ineffective assistance of counsel claim must also fail.

### 6. Harmless Error

-12-

Respondent asserts that even if any of Petitioner's legal theories had merit, Petitioner would not be entitled to relief because the ballistics evidence presented at trial did not play a role in identifying Petitioner as one of the shooters, and identification was the only disputed factual question at trial.

In a habeas corpus case proceeding under 28 U.S.C. § 2254, a federal court must assess the prejudicial impact of a constitutional error in a state-court criminal trial under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *Fry v. Plier*, 551 U.S. 112, 121-122 (2007); *Jaradat v. Williams*, 591 F.3d 863, 869 (6th Cir. 2010). Under *Brecht*, a constitutional error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

After careful review of the trial record and the new evidence, the Court finds that the admission of the erroneous ballistics evidence at trial did not have a substantial and injurious effect or influence in determining the jury's verdict. Petitioner argues that the new evidence shows that one firearm fired at least five bullets and another fired fourteen. From this he asserts that the reduced number of shots fired by either shooter would have allowed defense counsel to argue that there was no intent to kill. The argument is unconvincing. Even if the jury believed, at best, that Petitioner only fired five shots with an assault rifle, it is unlikely that the jury would have found that he did not intend to kill the victim. There is little practical difference between shooting at someone with an AK-47 from a car five times or nineteen times. Either way, the inference that the shooter intended

to kill his target is a strong one.

Moreover, none of the witnesses testified that the shots originated anywhere other than the Jeep. Even assuming there was a second shooter in the Jeep, it would not have opened the door to any new defense. The prosecutor would merely have argued that Petitioner was guilty of premeditated murder for his active participation in a fatal shooting perpetrated by more than one person acting in concert. See *People v. Martin*, 150 Mich. App. 630, 634 (1986).

Petitioner also argues that the fact that more than one firearm was used could have opened a door to attack the identifying witness's credibility. Humphry testified that he saw Petitioner leaning out of the Jeep firing an AK-47. When the shots started, Humphry first attempted to back out of his parking space, but then he drove forward and crashed into a poll. He was shot in the leg and his car was struck by several other bullets. The fact that he did not see another shooter in the Jeep, if there was one, is hardly surprising under the circumstances, and it would not have seriously affected his credibility.

Accordingly, the Court finds that the erroneous ballistics evidence presented at trial did not have a substantial impact on the outcome of Petitioner's trial. Petitioner's first set of habeas claims are therefore without merit.

**B. Recanting Affidavit of Jail-House Informant**

Petitioner's second claim asserts that the prosecutor committed misconduct when she elicited false testimony from the jail-house informant, Kim Harvey, that he was not offered leniency for his testimony against Petitioner. This claim was raised in the Michigan Court of Appeals during Petitioner's direct appeal on the merits.

As indicated above, under *Brady* and its progeny, a criminal defendant's due process rights

-14-

are violated when the prosecution suppresses exculpatory evidence. *Williams v. Coyle*, 260 F.3d 684, 706-07 (6th Cir. 2001). "Exculpatory evidence includes evidence regarding the reliability of a witness." *Id*. at 707, citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Carter v. Bell*, 218 F.3d 581, 602 (6th Cir. 2001). The failure to disclose exculpatory evidence is material where the evidence creates a "reasonable probability of a different result," *id*. citing *Bagley*, 473 U.S. at 678, which exists when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id*. quoting *Kyles*, 514 U.S. at 434. Under *Brady*, such exculpatory evidence includes the contents of plea agreements with key government witnesses, which the prosecution must reveal. *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Here, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant next argues that the prosecutor deprived him of due process by intentionally withholding evidence of consideration provided to the jailhouse informant in exchange for his testimony against defendant. In support of this claim, defendant has presented the affidavits of the jailhouse informant, who averred that the prosecutor promised to reduce an armed robbery charge in exchange for his testimony.

> Constitutional claims of due process violation are reviewed de novo. *People v. Pitts*, 222 Mich. App. 260, 263 (1997). Under *Brady v. Maryland*, 373 U.S. 83 (1963), "[a] criminal defendant has a due process right of access to certain information possessed by the prosecution." *People v. Lester*, 232 Mich. App. 262, 281 (1998). "This due process requirement of disclosure applies to evidence," i.e., "evidence that might lead a jury to entertain a reasonable doubt about a defendant's guilt." *Id*. "Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.'" *Id*. at 281, quoting *United States v Bagley*, 473 U.S. 667, 676 (1985).

> "In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence

-15-

been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Lester*, supra at 281-282.

"The failure to disclose impeachment evidence does not require automatic reversal even where . . . the prosecution's case depends largely on the credibility of a particular witness." *Id*. at 282. Rather, "[t]he court still must find the evidence material," i.e., that there is a reasonable probability that, if disclosed, the evidence might have affective the outcome. *Id*. Generally, "impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant to the crime or where the likely effect on the witness' credibility would have undermined a critical element of the prosecution's case." *Id*. at 282-283. "In contrast, a new trial is generally not required where the testimony of the witness is corroborated by other testimony or where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Id*. at 283.

To the extent that defendant intends his brief on appeal to serve as a motion to remand under Michigan Court Rule 7.211(C)(1), we properly may consider the informant's affidavit for this purpose. According to the affidavit, the prosecutor promised to reduce the informant's armed robbery charges in exchange for his testimony. Even if defendant can satisfy the first three prongs of the *Brady* test, however, he has not shown a reasonable probability that the outcome of his trial would have been different had this alleged evidence been disclosed. As discussed previously, the jailhouse informant's testimony was not the only evidence supporting the conviction. Rather, another eyewitness testified that he observed the shooting, saw defendant clearly, and that he was certain that defendant was the shooter. In light of the testimony of this eyewitness, defendant has failed to establish a reasonable probability that the outcome of this trial would have been different had this alleged evidence been disclosed.

*People v. Kennedy*, No. 269102, 2007 WL 2118853, *2 (Mich. Ct. App. July 24, 2007).

The state court's decision that Petitioner could not demonstrate that he was prejudiced by the exclusion of this evidence did not result in an objectively unreasonable application of the established standard. Harvey admitted that he was in jail for an armed robbery conviction. He also admitted on cross-examination that he wrote a letter hoping for leniency in exchange for his testimony. A lawyer visited him and told him "that if I testify I should be able to walk for the case that I'm on with my testimony." Dkt. 7-6, at 111-112. Harvey testified that he spoke to a detective

about it. Accordingly, the witness was in fact impeached based on his criminal record and regarding his desire to receive consideration in exchange for his testimony.

Moreover, Harvey testified that he and his family members had been threatened by Petitioner after Petitioner learned Harvey would testify against him. These threats created an incentive for Harvey to sign the affidavit recanting his trial testimony. Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991).

In light of this impeachment evidence, the open question of whether Harvey's affidavit is truthful, and in light of the fact that Petitioner's conviction is supported by an eyewitness who knew Petitioner, it was not unreasonable for the state court to find that Petitioner did not demonstrate he was prejudiced by the alleged non-disclosure. See *United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."); *McCleskey v. Kemp*, 753 F.2d 877, 884-85 (11th Cir. 1985) (*en banc*) (no reasonable likelihood that undisclosed statement of government agent promising leniency would have affected the jury's assessment of witness's credibility where witness admitted to a number of previous convictions and admitted that he was testifying to protect himself from a codefendant), aff'd on other grounds, 481 U.S. 279 (1987); *Moore v. Zant*, 682 F. Supp. 549, 551 (M.D. Ga. 1988).

In short, Harvey's "background, character, potential motive for lying, and hope that he would obtain additional benefits in the future were all disclosed to the jury. The addition of one more inducement or promise of leniency relating to his convictions would not have given the jury a different picture of [Harvey]. Therefore, the prosecution's failure to disclosed the alleged agreement

would not, with reasonable probability, have changed the result of the underlying proceeding."
*Williams v. Calderon*, 48 F. Supp. 2d 979, 1003 (C.D. Cal. 1998).

The state courts did not unreasonably decide this claim.

## C. Self-Representation

Petitioner claims that he was denied his Sixth Amendment right to represent himself at trial when the trial court denied his request for self-representation at the beginning of trial.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. Const. amend. VI. This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. See *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. See *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970). Nevertheless, a defendant's waiver of his right to counsel and decision to proceed pro se must be knowing and intelligent. See *Faretta*, 422 U.S. at 835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). However, the Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants

against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).

Rather, the adequacy of a defendant's waiver is determined from the facts and circumstances of the

case. See *Tovar*, 541 U.S. at 88.

However, the right to self-representation is not absolute. See *Martinez*, 528 U.S. at 161. A

defendant's request for self-representation must be made clearly and unequivocally. See *Buhl v.*

*Cooksey*, 233 F. 3d 783, 792 (3d Cir. 2000). The right to self-representation may also be waived

through conduct which indicates that the defendant is vacillating on the issue or has abandoned his

or her request altogether. See *Wilson v. Walker*, 204 F. 3d 33, 37 (2d Cir. 2000). A waiver of the

right to self-representation may also be found if it reasonably appears to the court that the defendant

abandoned his initial request to represent himself. See *id.*

Here, the record shows that Petitioner abandoned his request to represent himself. Prior to

jury selection Petitioner voiced concern about the admission of prior bad acts evidence and

complained that his attorney had not discussed the matter with him. During the ensuing colloquy,

Petitioner stated that he would "rather go pro per." Dkt. 7-4, p. 10. The following morning, the Court

addressed Petitioner's request. It stated that it did not get the sense that Petitioner had seriously

requested to represent himself, but it was going to ask Petitioner if his request was genuine.

Petitioner then affirmed that he wished to represent himself because of his attorney's incompetence.

At that point, the trial court began to inform Petitioner of the dangers and disadvantages of

representing himself. Towards the end of the resulting exchange, Petitioner repeatedly stated "let's

just get it started." Dkt. 7-5, pp. 11, 12. When the Court asked him what he meant, Petitioner stated,

"He can represent me," and "he can do it." *Id.*, pp. 13-14. The prosecutor then stated that it was her

understanding that the request for self-representation had been withdrawn, and defense counsel

agreed. Petitioner voiced no objection.

In light of this record, the Court finds that Petitioner's statements indicated that he was vacillating on the issue and ultimately abandoned his request altogether. *Wilson*, 204 F. 3d at 37. Petitioner's right to self-representation was therefore not violated.

**D. Prior Bad Acts Evidence**

Petitioner next asserts that his trial was rendered fundamentally unfair in violation of due process because the prosecutor was allowed to elicit testimony that Petitioner had assaulted the victim and witnesses on prior occassions.  The claim is without merit because it cannot be supported with clearly established Supreme Court law.

"State-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. See *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Supreme Court has addressed whether other acts testimony is permissible under the Federal Rules of Evidence, *Huddleston v. United States*, 485 U.S. 681 (1988), but it has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the

meaning of section 2254(d)(1). *Id.* at 513.

The state courts found that the challenged evidence was admissible under Michigan Rule of Evidence 404(b). That decision is unassailable on habeas review. Petitioner's claim therefore cannot form a basis for granting habeas relief.

### E. Prosecutorial Misconduct

Petitioner next asserts that the prosecutor committed misconduct when, during the cross examination of alibi witness Durcia Woods, she suggested that Petitioner was guilty because Woods did not go to the police and tell them that Petitioner was with her when she heard he had been arrested. Petitioner also asserts that the prosecutor elicited from Petitioner on cross examination that he refused to give a statement to police.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard). The Supreme Court has determined that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). It is also a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial.

*Doyle v. Ohio*, 426 U.S. 610, 619 (1976).

The record shows that Petitioner testified on direct examination that he gave a statement to Detective Drew informing him who he was with at the time of the shooting. When the detective asked Petitioner if he would also tell him where and when he was with this person, Petitioner responded that he would not tell him where he was because "that's part of my defense. I don't want you to know exactly where I was." Dkt. 7-7, p. 183. The prosecutor then went on to cross-examine Petitioner about the fact that he did not want to write down anything for the detective about his whereabouts.

This line of questioning did not involve a violation of clearly established Supreme Court law. "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Because Petitioner chose to speak with the detective, the prosecutor's questions concerning his evasive responses regarding his whereabouts at the time of the shooting was not a comment upon his post-arrest silence. See *Dye v. Hofbauer*, 197 F. App'x 378, 386 (6th Cir. 2006). There was nothing improper about the prosecutor asking Petitioner to explain why he chose to give only partial information to the detective.

With respect to the cross-examination of Woods, the prosecutor asked her why she did not go to the police when she learned that Petitioner had been arrested for murder if he was on the phone with her when the shooting occurred. This line of questioning obviously had nothing to do with Petitioner's right to remain silent, but was a fair way to challenge the credibility of the witness.

Therefore, Petitioner's claims of prosecutorial misconduct are without merit.

-22-

**F. Ineffective Assistance of Trial Counsel**

Petitioner next asserts that he was denied the effective assistance of trial counsel when his counsel failed to object to the alleged misconduct of the prosecutor and failed to hire a private investigator.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning

-23-

of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."
*Id*. at 686.

With respect to the first allegation of ineffective assistance, the claim must fail because as discussed above, the prosecutor did not commit misconduct. Counsel cannot be deemed ineffective for failing to raise a meritless objection. See *Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006).

Petitioner's next allegation asserts that his counsel should have hired a private investigator. He claims that an investigator might have obtained phone records to corroborate his alibi defense and discovered whether D'Andre Humphrey was shot in the leg as he claimed at trial. Petitioner cannot demonstrate prejudice with respect to this claim because he has not shown that such phone records exist or that they would have supported his alibi defense. Nor has he demonstrated the absence of medical records relating to Humphrey's leg wound. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). This claim is without merit.

**G. Ineffective Assistance of Appellate Counsel**

Petitioner finally asserts that his appellate counsel was ineffective for failing to raise the claims on direct appeal that Petitioner raised in his first motion for relief from judgment. Petitioner cannot establish that appellate counsel erred in failing to raise Petitioner's post-conviction claims because the Court has found that those claims are without merit. Appellate counsel cannot be deemed deficient for failing to raise a futile claim. See *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

-24-

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

The Court concludes that a certificate of appealability is warranted in this case with respect to Petitioner's first and second claims because reasonable jurists could debate the Court's assessment of those claims. The Court notes that Petitioner's convictions were supported by the testimony of a single identifying eyewitness. Reasonable jurists could debate this Court's assessment of whether the erroneous ballistics evidence and the allegedly suppressed deal given to the jail house informant had a substantial impact on the result of Petitioner's trial given the fact that there was not overwhelming evidence of Petitioner's guilt presented at trial.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

-25-

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to Petitioner's first and second claims, but **DENIED** with respect to his other claims.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 24, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 24, 2014, by electronic and/or ordinary mail.

S/Jennifer Hernandez McCoy
Case Manager

-26-